FILED
DEC 10 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHANIEL BEASLEY,<br><br>Plaintiff,<br><br>v.<br><br>WALGREEN CO.,<br><br>Defendant. | 07CV6940<br>JUDGE HART<br>MAG. JUDGE VALDEZ<br><br>Jury Trial Requested |

## COMPLAINT

NOW COMES Plaintiff, NATHANIEL BEASLEY, by and through his counsel, LISA KANE & ASSOCIATES, P.C., and complaining of Defendant, WALGREEN CO., states as follows:

### PRELIMINARY STATEMENT

1. This action seeks redress for the violation of rights guaranteed to Plaintiff by 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff seeks mandatory injunctive relief, declaratory relief and damages to redress Defendant's discriminatory employment practices.

### JURISDICTIONAL STATEMENT

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection and redress deprivation of rights secured by 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### VENUE

3. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

## PARTIES

4.      Plaintiff, NATHANIEL BEASLEY, is an African-American citizen of the United States who resides in the State of Illinois.

5.      Defendant, WALGREEN CO., is a corporation properly recognized and sanctioned by the laws of the State of Illinois. At all times relevant hereto, Defendant has conducted, and continues to conduct, business in the State of Illinois. Defendant is engaged in an industry that affects commerce and is an employer for the purposes of 42 U.S.C. § 2000e(b).

## PROCEDURE

6.      Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on November 27, 2007. The EEOC issued Plaintiff a Notice of Right to Sue on November 30, 2007, which Plaintiff received on December 4, 2007. The Notice of Right to Sue entitles Plaintiff to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff has initiated this action within said ninety (90) day period.

## COUNT I – 42 U.S.C. § 1981 - RETALIATION

7.      Paragraphs one (1) through six (6) are incorporated by reference as if fully set out herein.

8.      Plaintiff began working for Defendant in August 1991 as a Service Clerk. Throughout his career, Plaintiff has advanced through Defendant's ranks, earning promotions to Assistant Manager, Executive Assistant Manager, and finally to Store Manager, during which Plaintiff has earned transfers to increasingly larger store locations.

9.      Throughout the duration of his employment, Plaintiff has performed in accordance

with Defendant's legitimate employment expectations, as evidenced by his longevity of service, lack of any substantive discipline, and numerous promotions, and any assertion to the contrary is a pretext for discrimination.

10. In 2000, Defendant assigned Plaintiff to Store #4306 in Chicago, Illinois. Under Plaintiff's guidance, Store #4306 has been Defendant's highest grossing store in its district, which is comprised of twenty-six (26) other locations.

11. Throughout his employment as a Store Manager, Defendant has discriminated against Plaintiff based on his race, African-American, by providing non-African-American Store Managers better resources and opportunities. Examples of such conduct are detailed below.

12. Throughout his tenure as a Store Manager, Defendant has primarily assigned African-American employees to manage its inner-city stores and Caucasian employees to lead the suburban locations.

13. Defendant customarily has allocated the Caucasian Store Managers operating the suburban store locations higher payrolls, higher expense allowances, and more staff members than provided to the African-American managers running the inner-city locations. Defendant has provided the Caucasian managers these preferential resources despite the fact that inner-city stores require more funding as evidenced by the higher customer traffic than their suburban counterparts.

14. Defendant compensates its Store Managers with bonuses based upon the sales performance of their assigned stores. As a result of these inequitable allocated resources, Plaintiff and other African-American Store Managers must work harder to make comparable bonuses to their similarly situated Caucasian co-workers.

15. Defendant further has impaired Plaintiff's ability to complete his job duties and

responsibilities by transferring members of Plaintiff's assistant managerial staff, whom he devoted substantial time and efforts training, to Caucasian Store Managers.

16. In 2005, Defendant transferred several of Plaintiff's Assistant Store Managers, including Lisa Mcbride-Shields, Craig Jones, and Glen Jones, to locations operated by Caucasian Store Managers and only provided Plaintiff with inexperienced replacements, leaving Plaintiff with an inferior staff for the busy holiday season.

17. The following year, during the 2006 holiday season, Defendant once again substantially cut Plaintiff's payroll, forcing Plaintiff to inadequately staff key locations during the busiest times of the year and resulting in decreased sales. On information and belief, Defendant did not severely cut the operating budgets of the Caucasian Store Managers in the Chicago region immediately preceding the vital holiday season.

18. On numerous occasions, Defendant has further required Plaintiff to assist other stores operated by Caucasian management. However, Defendant has not required such Caucasian managers to assist Plaintiff in operating his stores.

19. Defendant further refuses to enforce its policies and procedures in a consistent manner between Plaintiff and other Caucasian Store Managers in his region. For instance, Defendant has a policy requiring Store Managers to work every other weekend. While this policy is consistently enforced against Plaintiff, Defendant does not require the same of Caucasian Store Managers, who are not required to work every other weekend like their similarly situated African-American counterparts.

20. On numerous occasions throughout the year preceding the termination of his employment, Plaintiff had, to no avail, complained to Defendant's management regarding the

disparate treatment and resources between Caucasian and African-American Store Managers.

21. Between 2006 through his termination in 2007, Plaintiff made reports and complaints to his District Manager, Anas Alham-wi, and during Store Manager meetings regarding the disparate treatment afforded to African-American Store Managers, including but not limited to:

   a. Complaints regarding preferential resources provided to Caucasian Store Managers, despite the fact that African-American Store Managers generally operate locations that have more sales and more customers;

   b. Complaints regarding additional policies and procedures that African-American Store Managers are required to follow in comparison to their Caucasian counterparts. Such policies and procedures are even more difficult for the African-American Store Managers to comply with considering the fewer resources they are allocated; and

   c. Complaints regarding the transfer of his staff, whom Plaintiff had trained for several years, to Caucasian Store Managers.

22. In August 2007, due to the extra time constraints Defendant imposed on Plaintiff by providing him disparate resources, Plaintiff was forced to withdraw from Defendant's emerging leaders program. Such a withdrawal reflected negatively on District Manager Anas Alham-wi, who therefore tried to convince Plaintiff to reconsider. When Plaintiff refused, District Manager Anas Alham-wi stated "You all people just don't understand." District Manager Anas Alham-wi refused to discuss the meaning behind this statement to Plaintiff despite Plaintiff's repeated requests.

23. One month later, in September 2007, District Manager Anas Alham-wi again violated Defendant's usual and customary practices and policies by issuing a disciplinary warning to Plaintiff for displaying outdated merchandise through an e-mail that was visible to his entire store team rather

than address the issue in an appropriate private manner. Throughout his employment, Plaintiff has never witnessed Defendant issue a warning to a Caucasian Store Manager in such a public fashion.

24. That same month, on September 21, 2007, District Manager Anas Alham-wi instructed Store Managers in the region to distribute fliers for Defendant's flu influenza shot campaign. In issuing the directive, District Manager Anas Alham-wi advised the Store Managers not to hire additional staff or incur overtime to distribute the materials.

25. Based on the instruction not to incur overtime, as Plaintiff's staff was already stretched thin to cover the store operations, Plaintiff was forced to distribute the fliers personally. On information and belief, similarly situated Caucasian Store Managers with adequate staffing and resources did not have to personally distribute the promotional materials.

26. A few days later, on September 24, 2007, per District Manager Anas Alham-wi's instructions, Plaintiff distributed the fliers throughout his store's adjacent neighborhoods. While distributing the fliers, Plaintiff received a call from District Manager Anas Alham-wi inquiring as to Plaintiff's whereabouts, which Plaintiff thoroughly explained. Later that day, Plaintiff again discussed the issue with Alham-wi, who told Plaintiff that he understood and was just inquiring of Plaintiff's location.

27. The next day, despite his thorough explanations, Plaintiff received a call from District Manager Anas Alham-wi accusing him of lying about the incident. Plaintiff reiterated that he was following Alham-wi's instructions in distributing the fliers.

28. The next morning, on September 26, 2007, Plaintiff was instructed to meet with District Manager Anas Alham-wi and Ken English, Loss Prevention Agent. In the meeting, Alham-wi repeatedly accused Plaintiff of lying about the incident, suspended Plaintiff for forty-eight (48)

hours, without pay, and asked Plaintiff to relinquish his store keys.

29. After learning of his suspension, Plaintiff contacted Defendant's Employee Relations Department and the Regional Manager, John Grant, to ascertain the status of his employment. Both the Employee Relations Department and Regional Manager Grant refused to discuss the status of his employment with Plaintiff.

30. On October 3, 2007, in a meeting with District Manager Anas Alham-wi and Loss Prevention Agent English, Defendant terminated Plaintiff's employment for the purported reason of being dishonest, stating that Defendant "could not trust employees like [Plaintiff]."

31. Immediately following his termination, Plaintiff attempted to discuss the sequence of events with Regional Manager Grant; Mr. Handle, the Head of Store Operations; and the Employee Relations Department, to no avail.

32. On information and belief, Defendant orchestrated the sequence of events to substantiate a decision to terminate Plaintiff's employment following his complaints of the disparate treatment afforded to African-American employees.

33. The aforementioned acts and omissions of Defendant constitute retaliation against Plaintiff based on his opposition to the creation of a discriminatory work environment and have deprived Plaintiff of the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

34. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, NATHANIEL BEASLEY, prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which retaliates against an individual for complaining of an unlawful employment practice;

C. Order Defendant to make whole NATHANIEL BEASLEY by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Order Defendant to pay lost, foregone, and future wages to NATHANIEL BEASLEY;

E. Grant Plaintiff actual, consequential, compensatory, punitive and any other damages the Court may deem appropriate against Defendant;

F. Grant Plaintiff his attorney fees, costs, disbursements; and

G. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT II – TITLE VII - RETALIATION

35. Paragraphs one (1) through thirty-two (32) are incorporated by reference as if fully set out herein.

36. The aforementioned acts and omissions of Defendant constitute retaliation against

Plaintiff based on his opposition to the creation of a discriminatory work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

37. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, NATHANIEL BEASLEY, prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which retaliates against an individual for complaining of an unlawful employment practice;

C. Order Defendant to make whole NATHANIEL BEASLEY by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Grant Plaintiff actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E. Order Defendant to pay lost, foregone, and future wages to NATHANIEL BEASLEY;

F. Grant Plaintiff his attorney's fees, costs, disbursements; and

G. Grant Plaintiff such further relief as the Court deems necessary and proper in the

public interest.

## COUNT III – 42 U.S.C. § 1981- RACE DISCRIMINATION

38.    Paragraphs one (1) through thirty-one (31) are incorporated by reference as if fully set out herein.

39.    In contrast to Plaintiff, who was following his manager's instructions while absent from his store, Plaintiff has, on numerous occasions throughout his employment, witnessed Caucasian and non-African-American Store Managers absent from their stores during store hours and not receive any sort of substantive discipline or punishment.

40.    The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff on the basis of his race, African-American, and have deprived Plaintiff of the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

41.    As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, NATHANIEL BEASLEY, prays for judgment against Defendant and respectfully requests that this Court:

A.    Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

B.    Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any

employment practice which unlawfully discriminates on the basis of race;

C. Order Defendant to make whole NATHANIEL BEASLEY by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Order Defendant to pay lost, foregone, and future wages to NATHANIEL BEASLEY;

E. Grant Plaintiff actual, consequential, compensatory, punitive and any other damages the Court may deem appropriate against Defendant;

F. Grant Plaintiff his attorney fees, costs, disbursements; and

G. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT IV – TITLE VII - RACE DISCRIMINATION

42. Paragraphs one (1) through thirty-one (31) and thirty-nine (39) are incorporated by reference as if fully set out herein.

43. The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff on the basis of his race, African-American, by subjecting him to a racially discriminatory work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

44. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, NATHANIEL BEASLEY, prays for judgment against Defendant

and respectfully requests that this Court:

A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C. Order Defendant to make whole NATHANIEL BEASLEY by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Grant Plaintiff actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E. Order Defendant to pay lost, foregone, and future wages to NATHANIEL BEASLEY;

F. Grant Plaintiff his attorney's fees, costs, disbursements; and

G. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

45. Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this complaint.

Respectfully submitted,
NATHANIEL BEASLEY, Plaintiff,

By: _____
Lisa Kane, Attorney for Plaintiff

LISA KANE & ASSOCIATES, P.C.
Attorney for Plaintiff
120 South LaSalle Street, Suite 1420
Chicago, Illinois 60603
(312) 606-0383
Attorney Code No. 06203093

## Verification

I, NATHANIEL BEASLEY, declare under penalty of perjury that the foregoing is true and correct.

Executed on December 10, 2007.

_____
NATHANIEL BEASLEY

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Nathaniel Beasley
17738 Commercial Ave
Lansing, IL 60438

From: Chicago District Office
500 West Madison St
Suite 2800
Chicago, IL 60661

CERTIFIED MAIL 7099 3400 0014 4054 1443

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2008-01028 | Zelma Gonzalez, Investigator Support Asst | (312) 886-4821 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____   11-30-07
John P. Rowe,                (Date Mailed)
District Director

Enclosures(s)

cc: WALGREENS CO.